UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MARY L. BRYANT                                                                              PLAINTIFF

VERSUS                                                     CIVIL ACTION NO. 5:11CV71-DCB-RHW

MICHAEL J. ASTRUE,
Commissioner of SSA                                                         DEFENDANT

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

This matter is before the Court on Plaintiff Mary L. Bryant's [10] Motion to Reverse, or in the Alternative, to Remand; and Defendant's [13] Motion to Affirm the Decision of the Commissioner of the Social Security Administration. In her motion, Plaintiff argues that (1) the administrative law judge's (ALJ) evaluation regarding listed impairments was inadequate and contrary to Fifth Circuit law; (2) the ALJ failed to accord proper weight to the opinions of medical professionals, resulting in an assessment of Plaintiff's residual functional capacity that was unsupported by any medical opinion; (3) the ALJ erred in relying upon the testimony of the vocational expert; and (4) the ALJ erred in failing to find Plaintiff disabled pursuant to the testimony of the vocational expert.

**Factual and Procedural Background**

On March 29, 2007, Plaintiff filed applications for a period of disability, disability insurance benefits and Supplemental Security Income. She alleged that she became unable to work on March 8, 2007, as a result of chronic back pain, chronic neck pain, multiple joint pain, migraine headaches, fibromyalgia, and fatigue. She also alleged disability as a result of mental impairments, including depression, anxiety, and obsessive compulsive disorder. At the time of alleged onset, Plaintiff was 29 years old. She has an eighth grade education and past relevant

work experience as a home health aide/sitter, microfilm processor printer, newspaper inserter, waitress, and wire plugger.

Plaintiff requested a hearing before an ALJ, which was conducted on October 6, 2007. Subsequent to the hearing, the ALJ issued a decision denying benefits. In his written decision, the ALJ determined that Plaintiff had severe impairments of pain throughout her lumbar spine, depression, anxiety, and obsessive compulsive disorder. The ALJ concluded that Plaintiff retained the residual functional capacity to perform a reduced range of medium work. Specifically, he found that she could perform medium work except that she could only lift 50 pounds occasionally and 25 pounds frequently. She can stand/walk for 4 to 6 hours in an 8-hour work day and sit for 6 hours in an 8-hour work day. She can perform only simple repetitive tasks--with no detailed instructions. She cannot work a job requiring frequent interaction with the general public, but can do so on an occasional basis. Based on the testimony of a vocational expert, the ALJ concluded that given Plaintiff's limitations, she could perform her past relevant work as a wire plugger and print technology microfilm processor. Accordingly, the ALJ concluded that Plaintiff was not disabled.

Plaintiff pursued an appeal with the Appeals Council. On March 2, 2011, the Appeals Council issue a letter denying Plaintiff's request for review. Plaintiff then filed the instant lawsuit.

## **Law and Analysis**

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.

1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g).  This standard requires supporting evidence that is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision."  *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).  "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'"  *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).  While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language.  *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment.  42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5).  The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one

3

of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id*.

**Listed Impairments**

At step three of the sequential evaluation process, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals the criteria of one of the listed impairments. Plaintiff asserts that the ALJ's evaluation at step three was inadequate and contrary to Fifth Circuit law. In this case, the ALJ concluded that

> No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment in the Listing of Impairments.

The ALJ specifically considered the listings of 12.04 and 12.06. In support of this conclusion, the ALJ noted that claimant had mild restrictions in activities of daily living and moderate difficulties in social functioning. He also concluded that Plaintiff had moderate difficulties with respect to concentration, persistence or pace. The ALJ found that Plaintiff has experienced no episodes of decompensation of extended duration. The ALJ also found that the record does not reflect a complete inability to function outside of her home. To the contrary, Plaintiff's

4

testimony supported an opposite conclusion.

In her motion, Plaintiff argues that the ALJ relied on a non-examining psychologist (Dr. Sharon Scates) to reach his conclusions. She further argues that Dr. Arora's Mental Impairment Questionnaire (MIQ) of August 8, 2007, included findings relative to Listings 12.04 and/or 12.06. Although Plaintiff concedes that Dr. Arora's MIQ "does not support a finding that Ms. Bryant's mental impairments met Listings 12.04 and/or 12.06" she argues that "it certainly raises the question regarding medical equivalency." Plaintiff also argues that the ALJ failed to consider Listing 12.07--Somatoform Disorder. Plaintiff challenges the ALJ's findings with respect to the listed impairments, but concedes that none of the medical evidence (including her treating psychiatrist's MIQ) supports a finding that her mental impairments meet the applicable listings. Although Plaintiff raises the specter that Dr. Arora's MIQ might implicate "medical equivalency", she fails to explain with any specificity the connection between Dr. Arora's MIQ and a medical equivalency to one of the listed impairments. Plaintiff also asserts that the ALJ did not consider Dr. Arora's MIQ of August 8, 2007; however, a review of the ALJ's opinion as a whole reveals that the ALJ clearly did review and consider Dr. Arora's evaluations when rendering his decision. In fact, the ALJ rejected Dr. Arora's opinion.

The ALJ gave very specific reasons for rejecting Dr. Arora's evaluation. The ALJ concluded that Dr. Arora's underlying treatment records were inconsistent with the MIQs. Specifically, Dr. Arora's treatment notes indicated that Plaintiff was doing well on her medication with improvement of her symptoms; she reported feeling less depressed/anxious; reported being able to drive better, with less shaking and nervousness; and reported her mood being a 9 out of 10. During one of her last treatments, Dr. Arora indicated that Plaintiff was

doing better, her anxiety and improved, and she was not shaking and nervous as before. Because of the inconsistencies between the treatment notes and the MIQs, the ALJ gave "little weight" to Dr. Arora's MIQs. The ALJ also noted that Dr. Arora's opinion was contradicted by the findings and opinions of Dr. Phillip Dunn, and Dr. Scates. They both concluded that the severity of Plaintiff's symptoms did not prevent her from performing simple, repetitive work tasks. The ALJ also found that Dr. Arora's assessments were contradicted by Plaintiff's own testimony. Thus, there is substantial evidence supporting the ALJ's conclusions regarding listed impairments and for rejecting Dr. Arora's opinion. To the extent that Plaintiff invokes the treating physician rule, the undersigned examines that issue under a separate sub-heading.

Plaintiff asserts that, at a minimum, the ALJ should have obtained a medical expert's opinion on the issue of equivalency pursuant to SSR 96-6p. The undersigned disagrees. An ALJ is required to obtain an updated medical opinion pursuant to SSR 96-6p only when in the opinion of the ALJ additional medical evidence may change the state agency medical or psychological consultant's finding that the claimant's impairments were not equivalent in severity to a listed impairment. *See* SSR 96-6p, 61 Fed. Reg. 34, 466, 1996 WL 374180. In this case, the state agency consultant psychologist concluded that Plaintiff's impairments did not meet or equal a listed impairment. Plaintiff fails to demonstrate that the ALJs failure to obtain additional medical evidence either lacked substantial evidence or was an improper application of the law.

To the extent that Plaintiff asserts the ALJ failed to consider Listing 12.07, the ALJ noted in his decision that Plaintiff did not "meet the criteria of *any* listed impairments described" in the applicable regulations, and that no physician "has mentioned findings equivalent in severity to the criteria of *any* listed impairment that are the same or equivalent to those of *any* listed

6

impairment in the Listing of Impairments." (Emphasis added). The ALJ's language indicates that he considered all impairments under 12.00, not only 12.04 and 12.06. Moreover, the paragraph B criteria for all three listings (12.04, 12.06, and 12.07) are virtually identical. The ALJ concluded that Plaintiff failed to meet these paragraph B criteria, specifically because he found that Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration". Having filed to meet the requirements of paragraph B, Plaintiff cannot establish that she met the impairment criteria of any of the 12.00 listings.

In sum, there is substantial evidence supporting the ALJ's conclusion that Plaintiff failed to satisfy any of the listed impairments. The ALJ relied on the Dr. Scates report, as well as the Plaintiff's own testimony. Moreover, Plaintiff concedes that her treating physician's opinion would not support a finding that she met any of the listed impairments. Plaintiff's undeveloped assertion that the medical evidence "raises questions" about medical equivalency and her citation to 12.07 do not alter this conclusion. Based on the foregoing, the undersigned concludes that there is substantial evidence supporting the ALJ's conclusion that Plaintiff failed to satisfy any of the listed impairments.

### **Residual Functional Capacity & Treating Physician Rule**

As part of her argument regarding the Listings of Impairments and as part of her critique of the ALJ's step 4 analysis, Plaintiff argues that the ALJ failed to accord proper weight to her treating physician, Dr. Arora. As a result, the ALJ relied on a non-treating source whose opinion contradicted the conclusions of a treating physician with respect to Plaintiff's impairments and limitations. Plaintiff argues that the RFC crafted by the ALJ was not supported by a medical

7

opinion from any treating or examining physician.

The ALJ determined that Plaintiff retained the RFC to perform medium work, except that she can only lift 50 pounds occasionally and 25 pounds frequently. She can stand/walk for 4 to 6 hours in an eight-hour day and sit for six hours in an eight hour day. She can perform only, simple, repetitive tasks which require detailed instructions. She cannot work at a job requiring frequent interaction with the general public, but can do so on an occasional basis.

Plaintiff's limitations include a physical as well as a mental/social aspect. With respect to her physical limitations, Plaintiff argues that no physical RFC was ever performed and that even though the ALJ found that Plaintiff suffered from severe pain throughout her lumbar spine, the ALJ did not explain how she would still be able to perform frequent lifting and carrying required to perform medium work activity.

The undersigned finds that there is substantial evidence to support the ALJ's conclusions with respect to Plaintiff's physical limitations. The ALJ outlined the diagnostic and treatment records for Plaintiff's neck and back pain in some detail, and noted a relative absence of abnormalities in the MRIs. The ALJ also concluded that Plaintiff's testimony regarding the intensity, persistence and limiting effects of her symptoms were not credible and were inconsistent with the medical records as a whole. The ALJ further relied on a medical consultant review by Dr. James Glenn, who indicated that Plaintiff's condition was "not severe" and that she had "no functional loss due to pain" with a negative MRI. Plaintiff has not identified any medical evidence or opinions that would support a finding of physical limitations more restrictive than those outlined by the ALJ. Dr. Glenn's conclusions in conjunction with the ALJ's credibility determinations, and in the absence of any contrary medical opinion, constitute

substantial evidence regarding Plaintiff's ability to perform reduced medium work.

With regard to Plaintiff's mental/social limitations, Plaintiff argues that the ALJ did not accord proper weight to Plaintiff's treating psychiatrist, Dr. Arora. The opinion of a treating physician is to be given controlling weight if the opinion is well-supported by clinical and laboratory findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. 404.1527(d)(2); *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). The ALJ may accord lesser weight to a treating physician's opinion for good cause, such as where the treating physician's opinion is conclusory, not credible, or unsupported by objective medical evidence or clinical laboratory findings. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)." *Id.* at 453 (emphasis in the original). The criteria for assessing a treating physician's opinion as required by 20 C.F.R. § 404.1527(d)(2) are: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.

The ALJ is free to assign little or no weight to the opinion of any physician for good cause. *Newton*, 209 F.3d at 455-56. A treating physician's opinion may be rejected when the evidence supports a contrary conclusion. *Martinez*, 64 F.3d at 176. "If the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling

9

weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence form the treating physician". *Newton*, 209 F.3d at 453.

In this case, the ALJ assigned "little weight" to the treating physician's opinion. As explained above, the ALJ gave specific reasons for assigning little weight to Dr. Arora's opinion. Specifically, the ALJ concluded that Dr. Arora's treatment records were inconsistent with the medical questionnaires. Dr. Arora's treatment notes indicated that Plaintiff was doing well on her medication with improvement of her symptoms; she reported feeling less depressed/anxious; reported being able to drive better, with less shaking and nervousness; and reported her mood being a 9 out of 10. During one of her last treatments, Dr. Arora indicated that Plaintiff was doing better, her anxiety and improved, and she was not shaking and nervous as before. Because of the inconsistencies between the treatment notes and the MIQs, the ALJ gave "little weight" to Dr. Arora's MIQs. The ALJ also noted that Dr. Arora's opinion was contradicted by the findings and opinions of Dr. Dunn (an examining, non-treating source) and Dr. Scates (a non-examining, non-treating source), who both concluded that the severity of Plaintiff's symptoms did not prevent her from performing simple, repetitive work tasks. The ALJ also found that Dr. Arora's assessments were contradicted by Plaintiff's testimony.

Plaintiff argues that the ALJ did not state that weight accorded to Dr. Dunn's opinion; however, the ALJ contrasted Dr. Dunn's conclusions favorably to those of Dr. Arora. Specifically, the ALJ stated that he gave little weight to Dr. Arora's opinion and that his opinion "is contradicted by the findings and opinions of Dr. Dunn. . . " The logical implication is that the ALJ accorded greater weight to Dr. Dunn than to Dr. Arora, even though he did not explicitly

state the weight given to Dr. Dunn's opinions.

Plaintiff also asserts that "there are no substantial differences" between the opinions of Dr. Arora and Dr. Dunn. However, in support of this assertion, Plaintiff points only to Dr. Dunn's conclusion that Plaintiff would have difficulty interacting with colleagues in a work environment. The ALJ acknowledged Dr. Dunn's conclusion that Plaintiff was somewhat socially withdrawn, which would interfere with her functioning in a public setting or interacting with colleagues in a work environment. By contrast, Dr. Arora concluded that Plaintiff had marked limitations in accepting instructions and responding appropriately to crticism from supervisors and marked limitations in getting along with co-workers or peers. The ALJ reflected Dr. Dunn's conclusions in Plaintiff's RFC, which indicated that Plaintiff "cannot perform tasks which require detailed instructions" and "cannot work at a job requiring frequent interaction with the general public, but can do so on an occasional basis." Plaintiff's argument that there are no substantial differences between the opinions of Dr. Dunn and Dr. Arora is an overstatement and not supported by the record.

Plaintiff also asserts that the ALJ improperly assumed the role of medical expert when, in discrediting Dr. Arora's opiinion, the ALJ concluded that if Plaintiff's "impairment is as severe as Dr. Arora indicated more aggressive form of treatment, such as in-patient treatment would have been recommended." Regardless of whether this isolated statement went beyond the medical opinion evidence, the ALJ presented other sufficient and adequate grounds for rejecting Dr. Arora's opinion.

In sum, the ALJ rejected the opinion of Dr. Arora for good cause. Substantial evidence in the record supported a conclusion different from that reached by Dr. Arora. Accordingly, the

11

undersigned finds that the ALJ did not err in his assessment of the opinions of Plaintiff's treating physician.

**<u>Vocational Expert's Opinion & Past Relevant Work</u>**

Plaintiff challenges the ALJ's conclusions that she can perform past relevant work. First, she argues that the ALJ found that Plaintiff could "stand/walk for 4-6 hours"; however, the ALJ's hypothetical presented to the vocational expert did not include a standing/walking limitation of 4-6 hours. Second, she argues that the ALJ's RFC failed to include vocationally-relevant mental limitations. Third, the ALJ failed to accept the vocational expert's conclusion that the mental limitations found by Dr. Arora would preclude Plaintiff from any regular sustained employment.

With respect to the physical limitation of standing/walking for 4 to 6 hours, it is true that there is a slight discrepancy between what the ALJ found as Plaintiff's physical limitations and what he presented to the vocational expert as a hypothetical. To be more precise, the ALJ found that Plaintiff could "stand/walk for 4-6 hours in an eight hour day"; however, in the hypothetical presented to the vocational expert, the ALJ asked the expert to assume that Plaintiff can "stand and walk for 6 hours during an 8 hour period." The undersigned finds that this is a distinction without a real difference. If Plaintiff can stand/walk for 4 to 6 hours out of an 8-hour work day, then it does not deviate from this limitation for the vocational expert to consider jobs for which Plaintiff would be required to stand and walk for 6 hours during an 8-hour day. Six hours falls within the range of 4 to 6 hours. The undersigned finds that the ALJ did not err in his presentation of the hypothetical.

With respect to the mental impairment limitations, Plaintiff failed to specify which

12

limitations should have been included in the hypothetical and merely referenced earlier arguments about Dr. Arora's opinion regarding Plaintiff's limitations. Also, given that the ALJ gave little weight to Dr. Arora's conclusions, it follows that the ALJ would not incorporate those conclusions into an RFC or include them in a hypothetical to the vocational expert. Given that the undersigned has concluded that there was substantial evidence supporting the ALJ's decision with respect to Plaintiff's mental limitations and that the ALJ had good cause for rejecting Dr. Arora's opinion, there is no merit to Plaintiff's argument that the ALJ's hypothetical should have incorporated Dr. Arora's conclusions regarding mental impairment and limitations.

Finally, Plaintiff argues that the ALJ erred when he failed to find Plaintiff disabled pursuant to the vocational expert's testimony based on the limitations ascribed by Dr. Arora. During the hearing before the ALJ, Plaintiff's counsel asked the vocational expert to include the mental imitations found by Dr. Arora. The vocational expert stated that such limitations would preclude regular, sustained employment at any job. Plaintiff argues that in light of this testimony, the ALJ erred in rejecting the opinion of Dr. Arora. The undersigned finds Plaintiff's argument is without merit. As explained above, the ALJ rejected for good cause the opinion of Dr. Arora. Therefore, the ALJ was not required to include Dr. Arora's opinion in the limitations and hypothetical presented to the vocational expert. Consequently, the vocational expert's testimony regarding Plaintiff's ability to work, as it relates to the limitations attributed by Dr. Arora, has no bearing on the ultimate finding of whether Plaintiff could perform her past relevant work.

## **RECOMMENDATION**

The undersigned recommends that Plaintiff's [10] Motion to Reverse or Remand be

DENIED and that the Defendant's [13] Motion to Affirm be GRANTED.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, any party who objects to this Recommendation must, within fourteen (14) days after being served a copy of the Recommendation, serve and file with the Clerk of Court his written objections to the Recommendation, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. A party filing objections must identify specifically those findings, conclusions, and recommendations to which objection are being made; the District Court need not consider frivolous, conclusive or general objections. A party's failure to file objections to the proposed findings, conclusions, and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. A party who fails to file written objections to the proposed findings, conclusions, and Recommendation within fourteen (14) days after being served with a copy, shall be barred, except upon the grounds of plain error, from attacking on appeal any proposed factual finding and legal conclusion accepted by the District Court to which the party did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED, this the 15th day of May, 2012.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE